684 So.2d 866 (1996)
In the Interest of C.D.D., a Child.
C.D.D., a Child; Joey D. Moore; and Beverly Moore, Appellants,
v.
STATE of Florida, Appellee.
No. 95-02576.
District Court of Appeal of Florida, Second District.
December 13, 1996.
James Marion Moorman, Public Defender, and Joshua Schoen, Assistant Public Defender, Bartow, for Appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Ronald Napolitano, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Judge.
C.D.D., a juvenile, appeals from a restitution order and also challenges his community control and costs imposed as a result of his adjudication of delinquency for grand theft. C.D.D.'s parents also appeal from the restitution order which makes C.D.D. and his mother jointly and severally liable for $14,350 in restitution. We reverse the restitution award and remand the cause to the trial court because the state did not prove that C.D.D.'s offense caused the $14,350 loss.
At the restitution hearing, Daniel Collins testified that he had approximately $18,000 in a jacket in his bedroom closet. Mr. Collins believed that he had last checked on the money approximately two to four weeks before he noticed that all of the money except $3,200 was missing. Mr. Collins' son, Jeffrey, had shown the money to his friend, Tom Hicks. In his statement to the police, Tom explained that the Collins' home was generally left unlocked.
On three occasions, Tom entered the Collins' home and stole a total of $7,900 from the jacket. On the first occasion, Tom entered the home alone and stole $200. Tom then *867 told C.D.D. about the existence of this money, and C.D.D. accompanied Tom on the next two occasions and acted as a lookout while Tom stole money from the jacket. The first time C.D.D. accompanied Tom into the Collins' home, Tom took approximately $1,500 from the jacket and gave $600 to C.D.D. On the next occasion, Tom took approximately $6,200 out of the jacket and gave $1,200 to C.D.D., who believed that the money was being split evenly between them. C.D.D. testified that, other than on these two occasions when he accompanied Tom to the Collins' home, C.D.D. did not steal or receive any other money from the jacket.
After Mr. Collins learned that money was missing from his jacket, he called the police. Tom and C.D.D. were subsequently charged with grand theft. Although Mr. Collins determined that both of his children, Jeffrey and Jennifer, had stolen from him, he did not press any charges against either of them.
Jeffrey, who lived with Mr. Collins the whole time the money was left in the jacket, testified that he stole $350 from the jacket. In contrast, Tom Hicks, who is Jeffrey's best friend and who learned about the existence of the money from Jeffrey, stated that he saw Jeffrey steal about $3,000 to $4,000 from the coat pocket. Jennifer Collins testified that she stole $100 from the jacket.
Thus, the state established at the restitution hearing: Tom Hicks had taken $200 on his own and $7,700 while acting in concert with C.D.D.; Jeffrey Collins had taken $350; Jennifer Collins had taken $100; $3,200 was left in the jacket pocket; and unaccounted for was $6,450. Defense counsel argued that C.D.D. should only be held liable for the amount of money that was taken through C.D.D. and Tom's joint enterprise. The trial court stated that "all the testimony of the thieves was suspect" and that the court was going to give Jeffrey and Jennifer Collins the benefit of the doubt. The trial court held C.D.D. liable for the unaccounted for $6,450, in addition to the $7,700 that Tom and C.D.D. took, as well as the $200 that Tom took alone. The court did not address C.D.D.'s or his mother's ability to pay the restitution ordered.
In juvenile cases, a court may "order the child to make restitution in money, through a promissory note cosigned by the child's parent or guardian, or in kind for any damage or loss caused by the child's offense in a reasonable amount or manner to be determined by the court." § 39.054(1)(f), Fla. Stat. (1995). The trial court ordered C.D.D. and his mother to pay $14,350 in restitution. Of that amount, the state did not present any evidence that C.D.D.'s offense caused the loss of the unaccounted for $6,450 or the $200 Tom Hicks admittedly took while acting alone. See Strickland v. State, 685 So.2d 1365 (Fla. 2d DCA 1996) (state did not meet burden of proving defendant's conduct caused entire loss claimed); J.M.G. v. State, 629 So.2d 1081 (Fla. 1st DCA 1994) (there must be a causal relationship between child's offense and loss to the victim); Dyer v. State, 622 So.2d 1158 (Fla. 5th DCA 1993) (state has burden to prove by preponderance of evidence amount of restitution).
The restitution award must be reduced by the $200 Tom Hicks stole while acting alone because C.D.D.'s conduct did not cause the loss. Based on the proof in our record, C.D.D. also cannot be held responsible for the unaccounted for $6,450 loss. Thus, we reverse the restitution order. On remand, the trial court, in its discretion, may take further evidence before it enters a new restitution order.
In addition, the trial court must determine ability to pay restitution before entering the restitution order. See § 39.054(1)(a)1., Fla.Stat. (1995) ("amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make"); A.J. v. State, 677 So.2d 935, 938 (Fla. 4th DCA 1996) (court must determine what child "may reasonably be expected to earn upon finding suitable employment and base the amount of restitution on those earnings").
C.D.D. also contends that the delinquency order should state that his community control is limited to the date of his nineteenth birthday because he will turn nineteen before the maximum term of five years. See C.P. v. State, 674 So.2d 183, 184 (Fla. 2d DCA 1996) *868 (community control limited to maximum adult term or to date of juvenile's nineteenth birthday, whichever occurs first). While C.D.D.'s community control cannot extend beyond his nineteenth birthday, pursuant to section 39.054(1)(a)4., Florida Statutes (1995), the trial court should clarify in the delinquency order that the community control is for an indeterminate period of time not to exceed C.D.D.'s nineteenth birthday. In addition, the delinquency order reflects that adjudication was withheld. As the state notes, the delinquency order must be corrected to conform to the court's oral pronouncement adjudicating C.D.D. delinquent.
Finally, the trial court erred in imposing the $50 court cost in the delinquency order and the $2 service charge for each restitution payment in the restitution order without citing statutory authority to support the assessments. See Reyes v. State, 655 So.2d 111, 114 (Fla. 2d DCA 1995). Accordingly, we strike the $50 court cost and $2 service charge. On remand, the trial court may reimpose these costs, pursuant to sections 960.20 and 39.054(1)(f), Florida Statutes (1995), if it reflects the statutory authority in its orders.
Reversed, certain costs stricken, and remanded.
THREADGILL, C.J., and QUINCE, J., concur.